IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34979-9-III (consolidated |
| Respondent, | ) | with No. 34992-6-III |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| COLIN BLAINE BECCARIA, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Officer Joseph O'Connell espied heroin in Colin Beccaria's car after O'Connell approached the car and ordered Beccaria to stop. Beccaria challenges his conviction for possession of the heroin on the ground that O'Connell lacked cause to detain him. We disagree and affirm Beccaria's conviction.

FACTS

This prosecution arises from Puyallup Tribal Police Officer Joseph O'Connell's arrest of Colin Beccaria in the early morning of August 7, 2015. By that date, O'Connell had eight years of experience as a patrol officer. Colin Beccaria only assigns error to the trial court's denial of his CrR 3.6 suppression motion. Therefore, we outline the facts presented during the suppression hearing.

While working the night shift on August 6-7, Officer Joseph O'Connell drove alone in his patrol car. At around 1:00 a.m., O'Connell noticed a 1990s Honda Accord bearing what the officer discerned to be a sham temporary license plate. Thieves target 1990s model Hondas and place forged temporary license plates on the stolen vehicles. A driver occupied the Honda, though the vehicle was parked in a driveway facing toward the accompanying house. O'Connell saw a female standing in front of a bedroom window at the end of the driveway. O'Connell suspected a possible burglary in progress.

Officer Joseph O'Connell stopped and exited his patrol car without activating his patrol lights. As O'Connell exited his car, the female walked away from the house and the parked Honda. O'Connell ordered the lady to stand at the back of the Honda, hands on the rear of the car, while he spoke with the person sitting inside the vehicle. As O'Connell approached the driver's side door of the Honda, Colin Beccaria exited the vehicle. O'Connell ordered Beccaria to stop. As Beccaria exited the Honda, O'Connell saw a bullet and heroin on the driver's seat. O'Connell handcuffed and arrested Beccaria.

Officer Joseph O'Connell called for assistance and Sergeant Paul Herrera arrived. With his flashlight, O'Connell peered through the Honda's windows and glimpsed a gun protruding from under the driver's seat. The officers obtained a warrant to search the Honda, and O'Connell seized the firearm.

2

No. 34979-9-III consolidated with No. 34992-6-III
*State v. Beccaria*

## PROCEDURE

The State of Washington charged Colin Beccaria with unlawful possession of a

firearm in the first degree, unlawful possession of a controlled substance, and unlawful

use of drug paraphernalia. Becarria moved to suppress all evidence obtained after Officer

Joseph O'Connell seized Beccaria. Beccaria sought suppression on the theory that

O'Connell arrested him without authority of law. The trial court conducted a CrR 3.6

hearing, during which only Officer O'Connell testified.

The trial court denied Colin Beccaria's motion to suppress. The court found,

among other facts:

> 1. Based on a totality of the circumstances, the officer had a reasonable belief that the defendant was engaged in criminal conduct. The officer observed an unregistered and occupied Honda Accord parked in a driveway and observed a woman looking through a bedroom window of a residence. The woman attempted to flee after observing the officer.
> 2. The woman was contacted and her explanation did not dispel the suspicion. During that conversation, the defendant attempted to exit the vehicle and was immediately approached by the officer. The officer observed a baggie of heroin and a bullet on the front driver's seat.

Clerk's Papers at 201.

A jury found Colin Beccaria guilty of unlawful possession of controlled substance

and not guilty on the other two counts. During sentencing, the trial court consolidated the

conviction with a second conviction for unlawful possession of a controlled substance.

The trial court imposed a twenty-four month sentence to run consecutively with

Beccaria's sentence from his other conviction.

3

## LAW AND ANALYSIS

### Legality of Seizure

Colin Beccaria contends the trial court should have granted his motion to suppress evidence of the heroin because Officer Joseph O'Connell lacked individualized and reasonable suspicion of Beccaria engaging in criminal behavior. According to Beccaria, Officer O'Connell lacked grounds to detain him and the espying of the heroin constitutes poisonous fruit.

The State asks us to affirm the denial of Colin Beccaria's motion to suppress because Officer Joseph O'Connell saw the heroin in plain view before seizing Beccaria and facts established an articulable suspicion of criminal behavior. The State also justifies O'Connell's initial contact with Beccaria as an attempt to preserve the status quo of the scene for purposes of officer safety rather than a seizure. Finally, the State argues that O'Connell viewed the heroin independently of any allegedly unconstitutional seizure. We affirm the trial court's denial of Beccaria's suppression motion because O'Connell presented sufficient facts to justify the seizure of Beccaria. We need not address whether O'Connell lawfully eyed the heroin regardless of detaining Beccaria.

As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment and article I, section 7 of the Washington State Constitution. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Five jealously and carefully drawn exceptions apply to the warrant requirement: exigent circumstances,

4

searches incident to a valid arrest, inventory searches, plain view seizures, and *Terry*

investigative stops. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968);

*State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). The State bears the burden

of demonstrating that a narrow exception vindicates the search or seizure. *State v.*

*Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). This appeal concerns only a *Terry*

stop.

Whenever a police officer accosts an individual and restrains his freedom to walk

away, he seizes the person. *Terry v. Ohio*, 392 U.S. at 16. To justify a *Terry* stop, the

police officer must identify specific and articulable facts which, taken together with

rational inferences from those facts, reasonably warrant an intrusion. *Terry v. Ohio*, 392

U.S. at 21; *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997). Once an officer

seizes an individual, no subsequent events or circumstances retroactively justify the

seizure. *State v. Mendez*, 137 Wn.2d 208, 224, 970 P.2d 722 (1999), *abrogated on other*

*grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132

(2007).

*Terry* permits an officer to briefly detain, for limited questioning, a person whom

he reasonably suspects of criminal activity. *State v. Broadnax*, 98 Wn.2d 289, 293-94,

654 P.2d 96 (1982), *abrogated on other grounds by Minnesota v. Dickerson*, 508 U.S.

366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). The purpose of the minimally intrusive

*Terry* stop, therefore, is to allow the police to make an intermediate response to a

5

situation for which there is no probable cause to arrest but which calls for further investigation. *State v. Kennedy*, 107 Wn.2d 1, 17, 726 P.2d 445 (1986).

The law recognizes that under certain circumstances, unarrested individuals may pose a threat to officer safety in an arrest situation. *State v. Horrace*, 144 Wn.2d 386, 392-93, 28 P.3d 753 (2001); *State v. Kennedy*, 107 Wn.2d at 11. Courts shy from substituting their judgment for that of police officers in the field. *State v. Belieu*, 112 Wn.2d 587, 601, 773 P.2d 46 (1989). A founded suspicion is all that is necessary; some basis from which the court can determine that the detention was not arbitrary or harassing. *State v. Belieu*, 112 Wn.2d at 601-02.

In *State v. Belieu*, our high court addressed the same issue under similar facts. Police officers received a citizen's report describing men he believed surveilled his home for burglary. In previous burglaries in the area, thieves stole weapons. When the officers arrived in the neighborhood, they observed two men, one of whom matched a description of the suspects. The men walked toward a parked, occupied vehicle, then turned in a different direction. A few minutes later, officers spotted the men running back toward the parked car. When the car drove down the street, the officers, with weapons drawn, stopped the vehicle. The officers ordered the suspects from the car, handcuffed, and placed them in patrol cars. While detaining the suspects, officers saw an illegally modified firearm in the vehicle. Our Supreme Court concluded that the officers possessed sufficient information on which to base reasonable fears for their own safety,

6

justifying a *Terry* seizure with drawn weapons.

Colin Beccaria argues that Officer Joseph O'Connell unlawfully seized him because insufficient evidence supported a reasonable belief that Beccaria engaged in criminal activity. This argument fails because the circumstances Officer O'Connell described included more evidence of criminal activity than known by the officers in *Belieu*. Further, O'Connell intruded less into Beccaria's liberty than the intrusion by the officers in *Belieu*.

In *State v. Belieu*, the facts justifying seizure of the suspects included a citizen accusing the defendants of reconnoitering his house, the defendants walking on a public street, the defendants furtively evading police observation, and the defendants joining others in a vehicle. Beccaria sat in an oft-stolen vehicle at 1:00 a.m. in the driveway of a house where an apparent associate skulked around a bedroom window. In *Belieu*, several officers trapped the suspects' vehicle and approached with weapons drawn. Officer Joseph O'Connell simply ordered Beccaria to stop as Beccaria exited the Honda.

## CONCLUSION

We affirm Colin Beccaria's conviction for unlawful possession of a controlled substance. Because of Beccaria's indigency, we deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the

7

No. 34979-9-III consolidated with No. 34992-6-III
*State v. Beccaria*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.